

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-12-921

| | |
|---|---|
| STEPHENS PRODUCTION COMPANY<br><br>APPELLANT<br><br>V.<br><br><br>BOYD BLACKARD, TERRY BLACKARD, and BARBARA BLACKARD<br><br>APPELLEES | **Opinion Delivered** SEPTEMBER 25, 2013<br><br>APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT<br>[NO. CV-09-99]<br><br>HONORABLE DENNIS CHARLES SUTTERFIELD<br><br>AFFIRMED |

## DAVID M. GLOVER, Judge

In a May 1, 2013 opinion, we ordered rebriefing in this case, noting critical omissions in the addendum.[1] Those deficiencies have been corrected, and we now address the merits of this case. Stephens Production Company (SPC) appeals from a July 18, 2012 order granting the Blackards' motion/amended motion to confirm settlement, and from a July 18, 2012 order granting the Blackards' request for attorneys' fees associated with enforcement of the settlement agreement. Its two primary points of appeal contend: 1) that the trial court erred in granting the Blackards' motion to confirm settlement, and 2) that the trial court erred in awarding the Blackards attorneys' fees. We disagree and affirm.

---

[1]*Stephens Prod. Co. v. Blackard*, 2013 Ark. App. 289 (2013).



*Background*

This case originated in 2009 with appellees, Boyd, Terry, and Barbara Blackard, filing a quiet-title action concerning their claim to ownership of the surface and all oil, gas, and other minerals lying in and under certain described property located in Johnson County, Arkansas. They named as defendants in the case SPC, Anadarko E & P Company, L.P., Anadarko Land Corp., and Upland Industrial Development Company. In 2011, SPC filed a counterclaim and cross-claim for interpleader, naming the Blackards as counterdefendants and Anadarko E & P Company, L.P., Anadarko Land Corp., and Upland Industrial Development Company as cross-defendants. These other parties have been dismissed from the case with prejudice, leaving only SPC and Boyd, Terry, and Barbara Blackards as parties to this appeal.

On March 20, 2012, the Blackards filed a motion to confirm settlement, alleging that they had reached a negotiated settlement with separate defendant, SPC. In this motion, the Blackards also asserted that in "[r]elying on the settlement with SPC, [the Blackards] made commitments to the separate Defendant, Anadarko, which have been accepted, successfully eliminating Anadarko's claim." On April 3, 2012, separate defendant SPC responded to the motion to confirm settlement and asserted that the motion should be denied because SPC had justifiably rescinded the settlement agreement because of a mutual mistake of law. Subsequently, the motion was amended and restated, evoking additional responses and replies.

On May 2, 2012, a hearing was held on the motion/amended motion to confirm settlement. The hearing essentially consisted of colloquy among the trial court and counsel for the Blackards, SPC, and the Anadarko defendants. As part of the colloquy, counsel for the Anadarko defendants acknowledged that a settlement had been reached between those defendants and that the Blackards had requested an order dismissing the Anadarko defendants "with no further obligations to Stephens under the lease." Counsel for SPC stated that it had no objection to the settlement between the Blackards and the Anadarko defendants. At the conclusion of the hearing, the trial court stated that it would sign the order releasing the Anadarko defendants and that it was granting the motion to enforce settlement between the Blackards and SPC.

On May 18, 2012, SPC filed a motion for reconsideration—before entry of the order granting the motion to confirm settlement, citing Arkansas Rule of Civil Procedure 59(b)[2] as its authority for doing so. On May 24, 2012, the Blackards filed a motion to recover attorneys' fees incurred in pursuing their motion to confirm settlement.

At a hearing held on July 18, 2012, the trial court first addressed SPC's objections to the order proposed by the Blackards regarding the court's granting of their motion to confirm settlement. The trial court determined that it would sign the Blackards' proposed

---

[2](b) *Time for Motion.* A motion for a new trial shall be filed not later than 10 days after the entry of judgment. A motion made before entry of judgment shall become effective and be treated as filed on the day after the judgment is entered. If the court neither grants nor denies the motion within 30 days of the date on which it is filed or treated as filed, it shall be deemed denied as of the 30th day.

SLIP OPINION

order because it accurately reflected the trial court's ruling. Next, SPC renewed its motion for reconsideration, and the trial court stated that it would take the matter under advisement. Finally, the Blackards argued their petition for attorneys' fees associated with their motion to confirm settlement, and the trial court also took that matter under advisement.

There were two July 18, 2012 orders. The first order granted the Blackards' motion to confirm settlement agreement, concluding that it was a valid settlement contract, that the conditional part of the agreement was fulfilled within a reasonable amount of time, and that the terms of the settlement agreement should be carried out forthwith. The second order denied SPC's oral motion for reconsideration and granted the Blackards' motion for attorneys' fees. The notice of appeal in this case was filed on August 15, 2012, and states that the appeal is from both July 18 orders and all of the court's rulings that shaped those judgments.

*Discussion*

I.  *The trial court erred in granting the Blackards' motion to confirm settlement.*

It is undisputed that the parties reached an agreement to settle their differences regarding the underlying lawsuit, which was filed by the Blackards, concerning the terms of an oil-and-gas lease covering property owned by the Blackards and asking the trial court to confirm, quiet, and vest title in the Blackards; to direct SPC to account for the production and income from a designated well; and to direct payment to the Blackards. In SPC's response to the Blackards' amended and restated motion to confirm settlement, it

stated, "SPC admits that a conditional settlement agreement was reached with Plaintiffs on February 7, 2012." The problem urged by SPC lies with the conditional part of the settlement agreement.

The settlement agreement was memorialized in a February 7, 2012 letter and provides in pertinent part:

> This fax confirms SPC and the Blackards' agreement settling the issues between them in the above litigation as follows, to wit:
>
> *When the Blackards obtain a confirmation as to Anadarko's lease being "invalid" on the Blackard acreage, these parties agree:*
>
> Blackard and SPC will execute a ratification of the Blackard lease presently held by SPC to (a) specifically include the thirty-eight (38) acres; (b) the royalty will be thirty-percent (30%) for the existing well beginning with November 1, 2011 production and twenty percent (20%) on any new wells thereafter drilled in this unit, so long as the lease continues in full force and effect; (c) SPC will pay Blackards the sum of $95,000 settling income due Blackards from the beginning of the existing well through October 2011 production.
>
> If this accurately sets forth our agreement please acknowledge below and we will press forward with Anadarko for the death of their lease.
>
> If there [are] any mistakes, please advise.

(Emphasis added.)

SPC contends that 1) it rescinded this agreement on February 27, 2012—prior to SPC performing the condition on or about March 12, 2012, and 2) that its rescission of the agreement was proper because of a mutual mistake of law concerning the underlying lease as reflected in the case of *Barber v. Chesapeake Exploration, LLC*, No. 4:11CV00234, 2012 WL 113280 (E.D. Ark. Jan. 13, 2012). The *Barber* case was decided on January 14,



2012, which was before the settlement agreement was reached on February 7, 2012. We find no merit to the arguments.

It is undisputed that the settlement agreement did not contain a time limit for the condition being satisfied, and the trial court specifically found that the condition was fulfilled in a reasonable amount of time. The parties made no agreement to rescind. Rather, SPC contends that its "rescission" of the agreement was justifiable based on a mutual mistake of the law—*i.e.*, that both parties were unaware of the federal court decision in the *Barber* case, *supra*, and that lack of awareness entitled them to back out of the deal. We disagree.

In *Security Life Insurance Co. v. Leeper*, 171 Ark. 77, 83–84, 284 S.W.12, 14–15 (1926), our supreme court refused to find a mistake-of-law argument applicable, explaining:

> The final contention is that there was a mutual mistake as to the law which induced the settlement, and that appellee is not bound by it. *It is a rule of almost universal application that a mistake of law, in the absence of fraud or undue influence, does not afford grounds for the abrogation or reformation of a contract. Such has been the rule declared by this court.* In those cases it was held that, where the contract was induced by reliance upon the superior knowledge of one of the parties, grounds for reformation were thus afforded, and this was found to be an exception to the general rule. Those cases, however, related to questions of the interpretation of the contract, and the effect of each of the decisions was that the court would place such interpretation upon it as was represented at the time of its execution by the party having the superior knowledge on the subject. *The present case is not one like those cited, which concern the representations made at the time of the execution of the original contract, but it is one where the representations or mistake arose at the time of the settlement of liability under the original contract. But, at any rate, this is not a case where the question of superior knowledge on the subject is important, for, as before stated, the parties were dealing at arms length*, and Hicks was representing an adverse interest, whilst appellee was acting upon the advice of those upon whom she relied in accepting as true the statement that there was no liability under the contract. *This is merely an instance of*

6

*adverse claims with respect to liability, and which was compromised and settled. If it be the law that, whenever parties settle their differences concerning liability in an uncertain state of the law and it afterwards turns out that they were mistaken the settlement can be disregarded, then there is no stability whatever about such a settlement, even though made in the utmost good faith.* The law has been definitely settled to the contrary by the Supreme Court of the United States in the case of *Mutual Life Insurance Co. v. Phinney*, 178 U.S. 327.

(Some citations omitted & emphasis added.) We find the explanation offered in *Leeper* helpful in the instant case. Here, too, the parties were dealing at arms length in trying to compromise and settle adverse claims, and there was no allegation of fraud or undue influence.

Moreover, SPC's efforts to distinguish *Leeper* and other similar cases from the situation at hand are not convincing. That is, SPC argues that the cases relied upon by the Blackards involved court decisions that arose after, not before, a settlement was reached. It argues that, here, the *Barber* case was decided before the settlement was reached; that none of the parties were aware of the *Barber* decision; and that consequently, the present case is distinguishable. We consider the distinction to be one without a difference as far as the instant case is concerned. We are simply not persuaded that SPC established any basis for reneging on the settlement agreement.

II.     *The trial court erred in awarding attorney's fees to the Blackards.*

The gist of SPC's argument under this point is that even though the award of attorneys' fees was limited to work done with respect to the settlement agreement, because the underlying lawsuit was not one for breach of contract, the trial court erred in making the award. We find no error.

SLIP OPINION

Arkansas Code Annotated section 16-22-308 (Repl. 1999) provides:

> **Attorney's fees in certain civil actions.** *In any civil action to recover* on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, *or breach of contract*, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

(Emphasis added.)

Here, even though the underlying case was in the nature of a quiet-title action, it was necessitated by a dispute concerning the terms of oil/mineral/gas leases covering the Blackards' property, and in the underlying complaint, the prayer for relief included the following language: "WHEREFORE, Plaintiffs request that . . . an Order of the Court should be entered directing Defendant, Stephens Production Company, to account for the production and income from said well and direct payment thereof to Plaintiffs, together with any future payments due, for their costs, attorney fees, and for any other proper relief."

Accordingly, in deciding the attorneys' fees issue, the trial court limited the award of fees to those associated with the settlement agreement, and, in addition, the underlying dispute arose out of language in a lease, which is certainly in the nature of a contract. We find no error in the manner in which the trial court decided the issue pursuant to Arkansas Code Annotated section 16–22–308.

Affirmed.

WOOD and BROWN, JJ., agree.

*Hayes, Alford & Johnson, PLLC*, by: *Joel D. Johnson*, for appellants.

*Lonnie C. Turner*; and *Stephen C. Gardner, P.A.*, by: *Stephen C. Gardner*, for appellees.